# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM S. JENKINS, | : | |
|     Petitioner | : | |
| | : | No. 1:19-cv-1013 |
| v. | : | |
| | : | (Judge Rambo) |
| ERIC TICE, *et al.*, | : | |
|     Respondents | : | |

## **MEMORANDUM**

Before the Court is Petitioner William S. Jenkins ("Petitioner")'s amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 15.) The § 2254 petition has been fully briefed and is ripe for disposition. For the following reasons, the Court will dismiss Petitioner's amended § 2254 petition as untimely.

## I. BACKGROUND

### A. Procedural History

On September 14, 2011, Petitioner was charged with attempted rape—forcible compulsion, aggravated assault, and unlawful restraint/serious bodily injury. (Doc. No. 15-1 at 1.)[1] These charges arose from an incident that occurred on September

---

[1] For ease of reference, the Court utilizes the pagination assigned to all documents filed in the above-captioned case by the CM/ECF electronic filing system.

10, 2011. The Superior Court of Pennsylvania set forth the background of the case as follows:

> The victim in this matter, Veronica Daniels, before this incident, had seen Appellant on prior occasions and talked to him in a bar. After leaving a bar on September 10, 2011, Appellant propositioned Ms. Daniels to engage in sex for $40.00. Ms. Daniels had previous involvement with prostitution. She initially agreed to have vaginal intercourse with Appellant in exchange for $40.00. Accordingly, Appellant and Ms. Daniels entered into an alleyway by 1426 North Third Street in Harrisburg. The two began to engage in sexual contact, but Appellant could not sustain an erection and Ms. Daniels changed her mind. She told Appellant multiple times to stop. She also pushed Appellant away as he began to masturbate, but Appellant grabbed her throat and slammed her into a brick wall. This caused the victim to black out.
> When the victim regained consciousness, Appellant was attempting to remove her belt and she kicked him away. She then heard a man ask what was going on and Appellant ceased his assault. That individual, Todd Myers, was responding to a work-related emergency to repair an air conditioner at 1426 North Third Street. According to Mr. Myers, he ordinarily used the service entrance to the building but heard noises behind a dumpster and believed he was interrupting inappropriate behavior. Mr. Myers yelled for the people to leave, and reported the matter to his director, John Foltz. Mr. Foltz reviewed surveillance video of the incident and contacted his supervisor. The police were then alerted to the attack.
> Detective John O'Connor viewed the surveillance recording and ascertained the identity of the victim. He then travelled to Ms. Daniels' residence. Ms. Daniels was apprehensive at first and began to cry. Detective O'Connor informed her that she was not in trouble. Ms. Daniels told Detective O'Connor that she thought she was going to die, and that her throat still hurt as a result of Appellant choking her. She admitted that she had been a prostitute and initially agreed to have sex with Appellant. After the incident, she did not contact police, believing she would be blamed for the matter based on her prior history of prostitution. Appellant provided the police with his own statement in which he indicated that the victim agreed to let him choke her so he could ejaculate.

(Doc. No. 15-5 at 1.) Attorney Lenora Smith appeared to represent Petitioner on these charges.

Petitioner appeared before the Court of Common Pleas for Dauphin County, Pennsylvania, for a jury trial beginning on December 5, 2012. (Doc. No. 15-3 at 1.) On the first day of trial, Petitioner was placed under oath "to review the plea deal that had been offered and to ensure that he was knowingly and voluntarily rejecting the offer." (*Id.*) That plea offer would have resulted in a sentence of eight (8) to sixteen (16) years of incarceration.[2] (*Id.*) Prior to trial, the Commonwealth requested that Petitioner be charged with the lesser-included offense of criminal attempt to commit indecent assault. (*Id.*) At the conclusion of the trial, the Commonwealth requested a jury instruction for the offense of criminal attempt to commit indecent assault by forcible compulsion. (*Id.*) Petitioner, through counsel, requested a jury instruction on simple assault. (*Id.*) The trial court granted both requests. (*Id.*) On December 7, 2012, the jury found Petitioner guilty of criminal attempt to commit indecent assault by forcible compulsion and simple assault. (Doc. No. 15-2 at 3.) On September 30, 2013, the trial court sentenced Petitioner to an

---

[2] The record reflects that attorney Smith mistakenly believed that if Petitioner were convicted of attempted indecent assault, as opposed to attempted rape, he would not be subject to a 25-year mandatory minimum sentence. (Doc. No. 15-4 at 17.) Based on that mistaken belief, attorney Smith informed Petitioner that if he was acquitted of the attempted rape charge, he would not be subject to that mandatory minimum sentence. (*Id.*) She advised him not to accept the plea offer based upon that belief. (*Id.*) Attorney Smith also mistakenly believed that a conviction for indecent assault would be "graded as a misdemeanor of the second degree." (*Id.*)

3

aggregate sentence of 25 to 50 years of incarceration. (*Id.*) Petitioner subsequently filed a timely post-trial motion, which the trial court denied on December 17, 2013. (*Id.* at 7.)

On January 15, 2014, Petitioner appealed to the Superior Court of Pennsylvania. (*Id.*) On appeal, Petitioner argued that: (1) there was insufficient evidence to find him guilty of criminal attempt to commit indecent assault by forcible compulsion; (2) the jury's verdict was against the weight of the evidence; and (3) his sentence for criminal attempt to commit indecent assault by forcible compulsion was illegal because he was never charged with such offense and was never notified that a conviction on that charge would trigger a sentence beyond the statutory maximum. (Doc. No. 15-5 at 2.) On November 18, 2014, the Superior Court affirmed Petitioner's judgment of sentence. (*Id.* at 1.)

On November 18, 2015, Petitioner, through attorney Royce Morris, filed a Post Conviction Relief Act ("PCRA") petition in the Court of Common Pleas for Dauphin County. (Doc. No. 15-4.) The PCRA court held an evidentiary hearing on January 7, 2016. (Doc. No. 15-3 at 3.) On December 28, 2016, the PCRA court denied Petitioner's PCRA petition. (Doc. No. 15-2 at 9.) On January 25, 2017, Petitioner, through attorney Morris, appealed to the Superior Court. (*Id.*) On December 28, 2017, the Superior Court affirmed the denial of Petitioner's PCRA

petition. (Doc. No. 15-8.) On June 8, 2018, the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal. (Doc. No. 15-9 at 2.)

On June 14, 2019, Petitioner filed a *pro se* § 2254 petition in this Court. (Doc. No. 1.) Shortly thereafter, counsel petitioned for special admission to represent Petitioner in the above-captioned action. (Doc. No. 4.) On July 24, 2019, the Court approved counsel's petition. (Doc. No. 5.) Counsel effected service of Petitioner's petition on Respondents, and on August 16, 2019, Respondents filed a partial answer, asserting that Petitioner's § 2254 petition is time-barred. (Doc. No. 10.) Three (3) days later, Petitioner, through counsel, moved for leave to file an amended § 2254 petition. (Doc. No. 11.) In an Order dated September 4, 2019, the Court granted Petitioner's motion and directed that Petitioner filed his amended § 2254 petition within thirty (30) days. (Doc. No. 14.) Petitioner did so on October 4, 2019. (Doc. No. 15.) After receiving an extension of time (Doc. Nos. 16, 17), Respondents filed a supplemental response on October 28, 2019 (Doc. No. 18).

    **B.**    **Habeas Claims Presented**

Petitioner raises the following claims for relief in his amended § 2254 petition:

1. Trial counsel was ineffective when she failed to inform Petitioner about the mandatory minimum sentence applicable to the attempted indecent assault charge;

2. Trial counsel was ineffective for failing to request a jury instruction on attempted indecent assault without consent; and

5

3. Trial counsel was ineffective for failing to request a special verdict slip that would allow the jury to determine if Petitioner was guilty of attempted indecent assault without consent.

(Doc. No. 15 at 7.)

## II. STANDARD OF REVIEW

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." *See Dunn v. Colleran*, 247 F.3d 450, 468 (3d Cir. 2001) (quoting *Calderon v. Coleman*, 525 U.S. 414, 146 (1998)). The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism. *See Engle v. Isaac*, 456 U.S. 107, 128 (1982). "The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law." *Id.* States also have a recognized interest in the finality of convictions that have survived direct review within the state court system. *See Brecht v. Abrahamson*, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States." 28 U.S.C. § 2254(a). If a claim

presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief cannot be granted unless:

> the adjudication of the claim – (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

### III. DISCUSSION

As noted above, Respondents argue that Petitioner's § 2254 petition is untimely filed pursuant to the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under 28 U.S.C. § 2244(d), a state prisoner is subject to a one-year statute of limitations for the filing of a federal habeas corpus petition pursuant to 28 U.S.C. § 2254. This statute provides that:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –

  (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

  (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

  (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has

> been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28. U.S.C. § 2244(d).

Under this statute of limitation, a prisoner generally must file a federal habeas corpus petition within one year of the date his conviction became final. *See* 28 U.S.C. § 2244(d)(1)(A). Here, the applicable starting point for the statute of limitation is the "conclusion of direct review or the expiration of the time for seeking such review." *Id.* The Superior Court affirmed Petitioner's judgment of sentence on November 18, 2014, and Petitioner did not seek further appellate review by the Supreme Court of Pennsylvania. Consequently, his judgment of sentence became final on December 18, 2014, thirty (30) days after he could have sought allowance of appeal of the Superior Court's decision. *See Kuehner v. Com. of Pennsylvania*, Civ. No. 3:14-0800, 2016 WL 1595389, at *4 (M.D. Pa. Apr. 20, 2016). Therefore, Petitioner had one (1) year from December 18, 2014, or until December 18, 2015, to file a timely § 2254 petition. Petitioner filed his initial § 2254 petition on June 14,

2019. Consequently, unless it is subject to statutory or equitable tolling, it is jurisdictionally time-barred.

### A. Statutory Tolling

Pursuant to 28 U.S.C. § 2244, the running of the limitation period is suspended for the period of time when properly-filed state post-conviction proceedings are pending in any state court. 28 U.S.C. § 2244(2). An application for state post-conviction relief is "filed" when "it is delivered to, and accepted by, the appropriate court officer for placement into the official record." *See Artuz v. Bennett*, 431 U.S. 4, 8 (2000). "[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Id.* A post-conviction relief application remains pending in state court until "the state courts have finally resolved an application for state post[-]conviction relief [but] § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for *certiorari*." *See Lawrence v. Florida*, 549 U.S. 327, 333-36 (2007).

Here, 335 days of the limitations period elapsed until Petitioner filed a timely PCRA petition on November 18, 2015. (Doc. No. 15-4.) Petitioner's state post-conviction proceedings remained pending until June 5, 2018, when the Supreme Court of Pennsylvania denied Petitioner's petition for allowance of appeal. (Doc. No. 15-9 at 2.) At that time, only thirty (30) days remained of the federal limitations period. Petitioner, therefore, had until July 5, 2018 to file a timely § 2254 petition.

He did not file his initial § 2254 petition until June 14, 2019, 344 days after the limitations period had expired. Thus, Petitioner's § 2254 petition is barred by the statute of limitations unless he can establish that he is entitled to equitable tolling.[3]

B. **Equitable Tolling**

In his amended § 2254 petition, Petitioner asserts that he is entitled to equitable tolling of the limitations period. (Doc. No. 15 at 8-10.) In support of his argument, he maintains that he is entitled to equitable tolling because: (1) "trial counsel was grossly negligent in that she gave erroneous advice to Petitioner and instructed him not to take a plea deal"; (2) his PCRA petition was denied "despite his trial counsel's attached affidavit essentially admitting that she gave Petitioner inaccurate advice"; and (3) his appellate PCRA counsel "effectively abandoned" him. (*Id.* at 9-10.)

"[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Accordingly, equitable tolling is to be used sparingly and only in "extraordinary" and "rare" circumstances. *See Satterfield v. Johnson*, 434

---

[3] Petitioner does not argue for, and nothing in the record supports, belated commencement of the limitations period pursuant to 28 U.S.C. § 2244(d)(1)(B)-(D).

10

F.3d 185, 195 (3d Cir. 2006). The United States Court of Appeals for the Third Circuit has found that equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *See Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). The petitioner bears the burden of establishing that he is entitled to benefit from equitable tolling. *See Pace*, 544 U.S. at 418.

As an initial matter, Petitioner does not explain, and the Court does not discern, how trial counsel's alleged ineffectiveness and the denial of Petitioner's PCRA petition affected his ability to file a timely § 2254 petition and, therefore, entitles him to equitable tolling. *Cf. Randle v. Crawford*, 604 F.3d 1047, 1057-58 (9th Cir. 2010) (no equitable tolling where alleged negligence of counsel in failing to perfect timely appeal and failing to provide case files to petitioner in a timely manner had little to no bearing on petitioner's ability to file a timely federal habeas petition). Thus, the Court will focus only on Petitioner's allegation that he was "effectively abandoned" by appellate PCRA counsel. Petitioner asserts that attorney Morris, who represented Petitioner in PCRA proceedings, "was elected as a judge, and his case was then transferred to someone else in the law firm." (Doc. No. 15 at 10.) At some point, Petitioner's case was transferred to another law firm, Caldwell

11

& Kearns. (*Id.*) On June 5, 2018, attorney Joseph Sembrot wrote a letter to Petitioner informing him that on that date, the Supreme Court of Pennsylvania denied his petition for allowance of appeal. (Doc. No. 15-9.) The letter stated that "[w]ith this Order by the Supreme Court, your appeal is now concluded, and our representation of you is completed. We will not be filing any further appeals on your behalf in this case." (*Id.*) Petitioner asserts that, subsequently, he "wrote back to Sembrot and asked if he had any other options or if he could file anything else. However, Sembrot never responded to Petitioner. It was not until Petitioner's sister discovered that he could file a Habeas Corpus Petition, that Petitioner even knew that was an option." (Doc. No. 15 at 10.) Petitioner maintains further that attorney Sembrot's letter "made it seem as though Petitioner had no other options left." (*Id.*)

It is well established that "garden variety" claims of attorney negligence, such as miscalculation of a filing deadline, inadequate research, or other mistakes, do not rise to the level of "extraordinary circumstances" that warrant equitable tolling. *See Holland*, 560 U.S. at 651-52; *see also Schlueter v. Varner*, 384 F.3d 69, 76 (3d Cir. 2004) (holding that "[g]enerally . . . attorney error is not a sufficient basis for equitable tolling of the AEDPA's one-year period of limitation"); *Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002) (holding that a petitioner's receipt of erroneous advice from counsel regarding the deadline for filing a federal habeas corpus petition did not warrant equitable tolling); *Fahy v. Horn*, 240 F.3d 239, 244

(3d Cir. 2001) (finding that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling"). More egregious attorney conduct, however, such as an attorney's abandonment of his client, can create the "extraordinary circumstances" required for equitable tolling. *See Holland*, 560 U.S. at 652; *Ross v. Varano*, 712 F.3d 784, 803 (3d Cir. 2013); *see also Maples v. Thomas*, 565 U.S. 266, 281-82 (2012). For example,

> [a]n attorney's total failure to communicate with his client, particularly where the attorney has failed to inform his client that his case has been decided and that decision implicates the client's ability to bring further proceedings, can constitute attorney abandonment, thereby supplying 'extraordinary circumstances' justifying equitable tolling of the statute of limitations.

*Warren v. Sauers*, No. 1:12-CV-1819, 2015 WL 778208, at *8 (M.D. Pa. Feb. 24, 2015) (citations omitted).

In a case presenting similar circumstances to those presented by Petitioner here, the Third Circuit affirmed the district court's determination that equitable tolling was not warranted where the petitioner's attorney "fail[ed] to inform her that he was no longer representing her and that he was not filing a petition for allowance of appeal with the Pennsylvania Supreme Court." *Cristin v. Wolfe*, 168 F. App'x 508, 512 (3d Cir. 2006). In so deciding, the Third Circuit concluded that this alleged failure "did not give rise to the sort of affirmative misrepresentations present in . . . *Schlueter*." *Id.* Here, however, appellate PCRA counsel did not fail to inform

13

Petitioner that he was no longer representing him.  As noted above, attorney Sembrot wrote to Petitioner on June 5, 2018, the same day that the Supreme Court of Pennsylvania denied his petition for allowance of appeal.  (Doc. No. 15-9.)  The letter stated that "[w]ith this Order by the Supreme Court, your appeal is now concluded, and our representation of you is completed.  We will not be filing any further appeals on your behalf in this case." (*Id.*)  If the petitioner in *Cristin* was not entitled to equitable tolling for her attorney's alleged failure to provide such information, it stands to reason that Petitioner is not entitled to equitable tolling when attorney Sembrot explicitly informed him that his representation of Petitioner was complete and that he would be taking no further action on Petitioner's behalf.

Likewise, attorney Sembrot's failure to respond when Petitioner wrote and asked if he had any other options "does not bring [Petitioner's] situation into the realm of extraordinary circumstances to support equitable tolling."  *Navarro v. United States*, Nos. 2011-112, 1999-16-3, 2018 WL 3599591, at *5 (D.V.I. July 27, 2018) (concluding that equitable tolling was not warranted where petitioner asked counsel about the "next step" and received an allegedly "ineffective" response). While attorney Sembrot did not inform Petitioner of the option to seek *certiorari* from the United States Supreme Court or the option to file a § 2254 petition, Petitioner does not cite, and the Court has not located, any case suggesting that attorney Sembrot, who represented Petitioner in state appellate post-conviction

proceedings, had a duty to do so. *See Apilando v. Hawaii*, No. 1:12-cv-427 LEK-BMK, 2012 WL 4715163, at *5 (D. Haw. Oct. 2, 2012) (concluding that state post-conviction counsel "was under no obligation of which this court is aware to notify Petitioner regarding possible claims and limitation dates for filing a federal habeas corpus petition); *see also Cristin*, 168 F. App'x at 511-12 (equitable tolling not warranted where counsel never explained to petitioner that she could file a habeas corpus petition in federal court); *Martin v. Hurley*, 150 F. App'x 513, 516 (6th Cir. 2005) (equitable tolling not warranted for counsel's failure to advise petitioner of the deadline for filing a federal habeas petition); *United States v. Jones*, No. 1:10-cr-181-2, 2017 WL 6418949, at *4 (M.D. Pa. Dec. 15, 2017) (concluding that "a mere failure to inform [a petitioner] of the proper deadline for . . . filing [a federal habeas petition], or a failure to clarify such deadline, [did not amount] to the type of conduct that justifies equitable tolling"). Quite simply, Petitioner "does not allege, let alone establish, serious attorney misconduct, such as lying or persistent neglect, that typically warrants equitable tolling." *Ajamu-Osagboro v. Patrick*, 620 F. Supp. 2d 701, 717 (E.D. Pa. 2009).

Moreover, even if Petitioner had established such extraordinary circumstances, he has not shown that he acted with reasonable diligence to justify the application of equitable tolling. *See Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir. 2003) (noting that, even where extraordinary circumstances do exist, "[i]f the

15

person seeking equitable tolling has not exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances therefore did not prevent timely filing"). While Petitioner states that he wrote back to attorney Sembrot asking about other options and did not receive a response, "case law is clear that reasonable diligence requires a petitioner to do more than make a single—albeit important—inquiry to qualify for equitable tolling." *Navarro*, 2018 WL 3599591, at *6. While Petitioner asserts that he did not know that a federal habeas corpus petition was an option until his sister discovered that he could file one, "it is well-settled that a prisoner's ignorance of the law and lack of legal expertise does not excuse his failure to make a prompt and timely filing." *Hendricks v. Johnson*, 62 F. Supp. 3d 406, 411 (D. Del. 2014); *see also Mendez v. Superintendent SCI-Huntingdon*, No. 1:13-cv-1137, 2013 WL 3894865, at *3 (M.D. Pa. July 26, 2013) (citing cases concluding that lack of education or legal knowledge is not an extraordinary circumstance for purposes of equitable tolling). Quite simply, the unexplained delay of a year between notification of the denial of Petitioner's petition for allowance of appeal by the Supreme Court of Pennsylvania and the filing of his initial § 2254 petition does not constitute due diligence to justify the application of equitable tolling. *See Pace*, 544 U.S. at 419 (unexplained delay of five months precluded equitable tolling); *Snyder v. Kauffman*, no. 3:14-cv-1142,

2015 WL 7820661, at *4 (M.D. Pa. Nov. 4, 2015) (concluding that unexplained delay of 10 ½ months between the notification of the conclusion of petitioner's state proceedings and the filing of his federal habeas petition did not constitute due diligence). Accordingly, the Court will not apply equitable tolling to render Petitioner's § 2254 petition timely.[4]

## IV. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue

---

[4] In his amended § 2254 petition, Petitioner requests an evidentiary hearing, "even if limited to establishing a record regarding the interaction between Petitioner and substitute counsel, once Attorney Royce Morris became a judge." (Doc. No. 15 at 11.) As discussed *infra*, however, Petitioner has failed to allege the extraordinary circumstances and due diligence that would justify the application of equitable tolling, much less to hold an evidentiary hearing. *See Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 n.12 (3d Cir. 1991) (noting that a petitioner is not entitled to an evidentiary hearing based on "bald assertions and conclusory allegations'"). Accordingly, the Court declines to hold an evidentiary hearing in this matter.

when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, jurists of reason would not find the procedural disposition of this case debatable. Accordingly, no COA will issue.

## V. CONCLUSION

For the foregoing reasons, Petitioner's amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 15) will be dismissed as untimely and a COA will not issue. An appropriate Order follows.

                                        S/SYLVIA H. RAMBO
                                        United States District Judge

Dated: November 14, 2019